**The below described is SIGNED.**

**Dated: October 08, 2010**

        */s/ William T. Thurman*
**WILLIAM T. THURMAN**
**U.S. Bankruptcy Chief Judge**

---

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF UTAH**
**CENTRAL DIVISION**

| | |
|---|---|
| In re:<br><br>**Kenneth Woolsey and**<br>**Stephanie Woolsey,**<br><br>        Debtors. | **Bankruptcy No. 10-25893**<br><br>**Chapter 13** |

**MEMORANDUM DECISION**

The matter before the Court is the confirmation of the Debtors' Chapter 13 Amended Plan ("Plan"). Hearings were conducted on the Plan on July 20, 2010, and August 30, 2010, in which the Court listened to argument by David Cook for Kenneth and Stephanie Woolsey ("Debtors") and by Jocelyn Rick for the Chapter 13 Trustee, Kevin Anderson ("Trustee"). The primary issue to be resolved in this confirmation proceeding is whether the Plan must contain language acknowledging the continuance of a wholly unsecured lien on the Debtors' primary residence until full payment or discharge and reinstating such a lien if the Debtors do not receive a discharge in this case.

The Court has carefully reviewed and considered the parties' arguments and submissions

and has conducted its own independent research of the relevant case law. The Court issues the following Memorandum Decision, which constitutes the Court's findings of fact and conclusions of law under Federal Rule of Civil Procedure 52, made applicable to this proceeding by Federal Rules of Bankruptcy Procedure 9014 and 7052.

**I.    JURISDICTION AND VENUE**

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding under 28 U.S.C. § 157(a)(2)(L). Venue is properly laid in this Court under 28 U.S.C. § 1408.

**II.   BACKGROUND AND FINDINGS OF FACT**

Debtors commenced this chapter 13[1] case by filing a voluntary petition on May 4, 2010. Neither listed a prior bankruptcy case in their petition. In Debtors' Schedule A and D, they listed real property located on Nelson Peak Circle with a value of $295,800.00 subject to a first mortgage held by CitiMortgage for $333,000.00 and a second mortgage held by CitiBank, N.A. ("CitiBank") for $42,903.00. On June 12, 2010, Debtors commenced an adversary proceeding to avoid the second mortgage on the property. A Motion for Default Judgment and the corresponding certificates have been filed in that adversary proceeding, but no judgment has yet been entered. CitiBank filed a proof of claim, originally as a secured claim and amended as an unsecured claim.

Debtors filed an initial plan on May 20, 2010, and the Trustee filed a corresponding objection on June 21, 2010. Debtors filed an amended Plan on June 6, 2010. The Trustee's

---

[1] All chapter and section references herein are contained in Title 11 of the United States Code unless otherwise identified.

remaining objection at the time of hearing stated, "[T]he plan should clarify that if the Debtors prevail on the adversary proceeding, the creditor will still retain its lien until the entry of the discharge in this case under 11 U.S.C. § 1328, at which time the lien will be avoided (see 11 U.S.C. § 1325(a)(5)(B)(i)(I))."

Debtors filed a response and accompanying memorandum to the Trustee's objection asserting that including the language indicated by the Trustee would be contrary to the Bankruptcy Code ("Code") as the claim is a wholly unsecured claim and thus void at the time of the judgment of the adversary proceeding[2] as per § 506(d). No responsive materials were filed by CitiBank or the Trustee.

### III. DISCUSSION

#### A. Section 506

A discussion of lien avoidance (or lien stripping) often begins—and Debtors suggest ends—with § 506(a) and (d). A court under § 506(a) is permitted to bifurcate a secured creditor's claim into a portion that remains secured—that portion which corresponds to the value of the collateral at the time of the petition—and a portion that has become unsecured—the portion greater than the value of the collateral. Section 506(d) states, "To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void . . . ." The United States Supreme Court has decided that "allowed secured claim" in § 506(a) and (d) does not have the same meaning and therefore the "allowed secured claim" phrase in § 506(d) does not permit a debtor to avoid the portion of the lien that is not an "allowed secured claim"

---

[2] In re Northington, Case No. 00-34258 (Bankr. D. Utah Jan. 17, 2002), available at http://www.utb.uscourts.gov/localOpinions/opinions/423opin.pdf, requires a party in the District of Utah to avoid a lien in chapter 13 by adversary proceeding.

Document    Page 4 of 12

under § 506(a). <u>Dewsnup v. Timm</u>, 502 U.S. 410, 416 (1992). The Court found the creditor's argument more persative, which it recited as follows:

> [R]espondents, joined by the United States as amicus curiae, argue more broadly that the words "allowed secured claim" in § 506(d) need not be read as an indivisible term of art defined by reference to § 506(a), which by its terms is not a definitional provision. Rather, the words should be read term-by-term to refer to any claim that is, first, allowed, and, second, secured. Because there is no question that the claim at issue here has been "allowed" pursuant to § 502 of the Code and is secured by a lien with recourse to the underlying collateral, it does not come within the scope of § 506(d), which voids only liens corresponding to claims that have not been allowed and secured. This reading of § 506(d), according to respondents and the United States, gives the provision the simple and sensible function of voiding a lien whenever a claim secured by the lien itself has not been allowed. It ensures that the Code's determination not to allow the underlying claim against the debtor personally is given full effect by preventing its assertion against the debtor's property.

<u>Id.</u> at 415–16. Thus, under this reasoning, the creditor's lien passes through bankruptcy unaffected. <u>Id.</u> at 417. While Debtors correctly note, this opinion was specifically limited to chapter 7 debtors with undersecured (but not completely unsecured) liens (Mem. Supp. Debtors' Reply 3), <u>see</u> <u>Dewsnup</u> at 416–17, this Court finds the reasoning applies equally as addressing the differing definitions of "allowed secured claim." <u>See also</u> <u>Carroll v. Key Bank (In re Carroll)</u>, Ch. 13 Case No. 10-20642, Adv. No. 10-2259, (Bankr. D. Ut. Sept. 30, 2010) (unpublished). The Court determines it is bound by <u>Dewsnup</u> to not permit avoidance of the CitiBank lien by the Debtors under § 506(d).

**B.      Section 1322**

Lien avoidance is, however, permissible if permitted under other sections of the Code. Thus, debtors in chapter 13 cases can avoid a wholly unsecured lien or have it rendered satisfied,

4

even if the only collateral is the debtor's primary residence.  See Griffey v. U.S. Bank (In re Griffey), 335 B.R. 166 (10th Cir. B.A.P. 2005); Pierce v. Beneficial Mortgage Co. (In re Pierce), 282 B.R. 26 (Bankr. D. Utah 2002).[3]  Their ability to do so, however, depends on a similarly disjunctive reading of "allowed secured claim."  While § 1322(b)(2) permits alteration by a chapter 13 plan of the rights of a holder of a secured claim, section 1325(a)(5) imposes requirements for confirmation of a plan in relation to each "allowed secured claim" addressed by the plan.  This Court finds that in order for those two provisions to be sensibly read (especially in light of how they have been interpreted by the Supreme Court and the 10th Circuit Bankruptcy Appellate Panel), the "secured claim" referenced in § 1322 relates to § 506(a), which focuses on the term "secured;" and the "allowed secured claim" referenced in § 1325 is similar to that of § 506(d), which focuses on the term "allowed" as utilized under § 502.  See Dewsnup, 502 U.S. at 415; Griffey, 335 B.R. at 169–70.  Thus, a claim must receive the treatment required under § 1325(a)(5) if it has been allowed under § 502 and is "secured by a lien with recourse to the underlying collateral," Dewsnup, 502 U.S. at 415.

In this case, CitiBank filed a proof of claim to which no party has objected and thus it has been allowed under § 502(a).  Section 502 does not impact whether a claim is secured or unsecured—as the Supreme Court stated in Dewsnup, the question is whether a party has "recourse to the underlying collateral."  Id.  As there is no dispute that CitiBank holds a mortgage

---

[3] Other Courts of Appeals and Bankruptcy Appellate Panels have concurred with this result.  See, e.g., Zimmer v. PSB Lending Corp., 313 F.3d 1220 (9th Cir. 2002); Lane v. W. Interstate Bancorp, 280 F.3d 663 (6th Cir. 2002); Pond v. Farm Specialist Realty, 252 F.3d 122 (2d Cir. 2001); Tanner v. FirstPlus Fin., Inc., 217 F.3d 1357 (11th Cir. 2000); Bartee v. Tara Colony Homeowners Ass'n, 212 F.3d 277 (5th Cir. 2000); McDonald v. Master Fin., Inc., 205 F.3d 606 (3d Cir. 2000); Domestic Bank v. Mann, 249 B.R. 831 (1st Cir. B.A.P. 2000); Lam v. Investors Thrift, 211 B.R. 36 (9th Cir. B.A.P. 1997).

5

on the property, it has recourse to the property, and is thus an allowed secured claim for purposes of §§ 506(d) and 1325(a)(5), despite CitiBank's claim being completely unsecured under §§ 506(a) and 1322(b)(2). Further, although a proof of claim is prima facie evidence of the type of claim it is, see Agricredit Corp. v. Harrison (In re Harrison), 987 F.2d 677, 680 (10th Cir. 1993), CitiBank's amended proof of claim asserting its claim is unsecured is not a binding determination upon the Court and the Court in this case finds that CitiBank's claim is an allowed secured claim because it has recourse to the collateral and was not objected to by any party in interest.

Because this is an allowed secured claim for purposes of § 1325(a)(5), the Plan must conform with one of the subsections of § 1325(a)(5). See Bank of the Prairie v. Picht (In re Picht), 428 B.R. 885, 889 (10th Cir. B.A.P. 2010). The apparently most preferable provision to the Debtors is § 1325(a)(5)(B) which requires various provisions in the plan.[4] First, the plan must provide that the holder of the lien shall retain its claim until either its underlying debt is paid in full as determined by nonbankrutpcy law or the debtor is discharged under § 1328. § 1325(a)(5)(B)(i)(I) (2006). Second, the plan must provide that if the case is converted or dismissed without completion of the plan, the lien shall be reinstated. § 1325(a)(5)(B)(i)(II). Third, the plan must provide that "the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim . . . ." § 1325(a)(5)(B)(ii). Fourth, the plan must provide for equal, monthly payments on

---

[4] Debtors could also comply with § 1325(a)(5) if CitiBank were to accept the plan under § 1325(a)(5)(A)—which it has not—or if the Debtors were to surrender the collateral under § 1325(a)(5)(C)—which, the Court assumes, they would prefer not to do.

claims under § 1325(a)(5).  § 1325(a)(5)(B)(iii)(I).  The fifth provision relates to personal property and is irrelevant in this case.

The Plan before the Court does not contain the provisions providing for the retention of the lien until discharge or payment in full and for reinstating the lien upon conversion or discharge.  Because the claim of CitiBank is an allowed secured claim for purposes of § 1325(a)(5), the Plan must contain such language to be confirmed.  Without it, confirmation of the Plan should be denied.

The Court believes this outcome is not only demanded by the statutory language as explained by the Supreme Court, but is also the best outcome to prevent debtors from avoiding or satisfying a lien in chapter 13 without completing a plan in chapter 13.  The Court takes judicial notice of the statistics that, in the District of Utah between the dates of January 1, 2005, and March 31, 2010, 18,791 chapter 13 cases were filed.[5]  The Court also takes judicial notice that, of those cases, 1,501 were converted to another chapter and 9,462 were dismissed.  Thus approximately 58.3 percent of chapter 13 cases in this District did not receive a chapter 13 discharge.  The Court is concerned that if debtors were permitted to commence a chapter 13 case, avoid an unsecured lien, and then have their cases dismissed or converted to chapter 7, they would essentially be circumventing the clear holding in Dewsnup.[6]

---

[5] Of those 18,791 cases filed in this District, 365, or 1.9 percent, contained at least one action to avoid a lien.

[6] The Court recognizes that § 349(b)(1)(C) could help reduce the possibility of abuse under the method proposed by the Debtors and by the debtor in Dewsnup.  The Court believes, however, that it would be much less clear and ineffective than requiring lien retention and reinstatement language in the plan and that, more importantly, the application of § 349(b)(1)(C) is to revive only those liens that can be voided by § 506(d) after Dewsnup.

As an additional practical consideration, practice in this jurisdiction has been to include detailed legal descriptions of the encumbered property in proposed avoidance orders. After signing by a court, the party can record the order in the county where the property is located, giving record and, thus, constructive notice of the avoidance of the lien. If the case is later dismissed or converted to chapter 7, there is no mechanism to alert parties searching county records of the reinstatement of the lien pursuant to § 349. Accordingly, a new lender or buyer of the property may claim to be a bona fide purchaser or lender for value, but, pursuant to § 349, the prior lender with the reinstated lien could claim priority. Because of the unique nature of Utah's real property recording laws,[7] priority struggles will likely result if the Debtors in this case receive their requested relief in their Plan. To avoid creating such confusion in this and other cases with lien avoidance actions, the Court believes that § 349 could benefit from an additional mechanical and practical method to carry out its intent. The Court finds such assistance in § 105(a) which allows the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." Thus a combined reading of these code sections strongly suggests to the Court that a mortgage lien should not be allowed to be avoided unless a debtor has completely finished the plan and received a discharge. Upon such completion, an order avoiding the lien could be entered.

C.     **No-discharge Chapter 13 Cases**

The Court recognizes the split of authority that has arisen on the issue of lien avoidance in chapter 13 cases in which the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 prevents a party from receiving a chapter 13 discharge within four years of having receiving

---

[7] See Utah Code Ann. §57-3-102(1) (2000). See generally id. §§ 57-3-101–204.

a chapter 7 discharge. Although the standard fact pattern from those cases is not present here—the Debtors do not have a prior chapter 7 discharge and could be eligible for a discharge—the legal question as to whether an unsecured lien can be avoided prior to or without a discharge is a helpful analogy.

Avoidance of a lien is only available upon discharge or full payment of the underlying debt. See Picht, 428 B.R. at 891. In addition, the amount that must be paid to satisfy the "underlying debt" obligation under § 1325(a)(5)(B)(i)(I)(aa) is not limited to the amount of an allowed claim that is secured as determined by § 506(a). See id. In this case, the Debtors could avoid the unsecured lien if they were to receive a discharge under § 1328 or pay the underlying debt.

In addition to the statutory argument, many courts have found support for their decisions to not permit permanent lien avoidance without a discharge or full payment on the concern that doing so would essentially invalidate § 1328(f) and permit the debtors to get a second discharge. See, e.g., In re Mendoza, 2010 Bankr. LEXIS 664, *9–13 (Bankr. D. Colo. Jan. 21, 2010). On the other hand, courts in the cases which hold that avoidance of a lien does not require discharge or full payment under § 1325(a)(5) have generally determined that this type of abuse of concern in Mendoza would be prevented by a finding that the filing of the second bankruptcy case was in bad faith. See, e.g., In re Tran, 431 B.R. 230, 235 (Bankr. N.D. Cal. 2010). Because the facts of this case are different, in that the Debtors could qualify for a discharge, the Court finds the reasoning of Mendoza more persuasive. In particular, finding that a case had been filed in chapter 13 and then converted to chapter 7 solely to avoid an unsecured lien, and thus was filed in bad faith (in line with the Tran reasoning), would be much more difficult to determine

9

considering the motive for filing the case (1) would only be recognizable after the conversion had occurred and (2) could be masked by many other facts typical of good faith bankruptcy cases. Debtors would not need to be very crafty to use this inconsistency to accomplish their bad faith designs. Thus, to avoid encouraging bad faith filers, the Court aligns itself with the analysis of Mendoza and its cited cases.[8]

### D.    Undersecured Liens

Finally, relevant counterarguments have been made in cases in which a secured claim is undersecured (but not wholly unsecured) and debtors have sought to have the lien released upon paying the portion deemed secured by § 506(a) rather than waiting until discharge. The Court believes this avenue of lien avoidance is only available if the lien is avoided under § 506(d). As this Court finds that avenue is unavailable in this type of case, a lien can only be avoided by complying with § 1325(a)(5)—by receiving a discharge or paying the full amount of the underlying debt.

## IV.    CONCLUSION

The Court sees nothing prohibiting a debtor from treating a mortgage as unsecured pursuant to § 506(a) and then avoiding or deeming it satisfied upon receipt of a discharge at the completion of the plan. Such relief being available at the completion of the plan provides an incentive for debtors to fulfill their plans.

Based on the foregoing, the Court concludes that the Plan should not be confirmed. The Court will also enter an order in the adversary proceeding consistent with this Memorandum

---

[8] There is no evidence of bad faith or inappropriate craftiness by the Debtors in the present case. Rather, the Court believes its holding in this case based on statutory construction also sets a bright line rule to materially reduce improper creativity in other cases.

Decision denying the motion for default judgment. These rulings, however, are without prejudice to the Debtors to modify the relief for which they have sought, consistent with this Memorandum Decision, within 30 days of the entry of the related order. Failing any modifications within that time period, this case will be dismissed.

_____END OF DOCUMENT_____

ORDER SIGNED

oo00–00oo
**SERVICE LIST**

Service of the foregoing **MEMORANDUM DECISION** will be effected through the Bankruptcy Noticing Center to each party listed below:

Kevin R. Anderson
*Chapter 13 Trustee*

David M. Cook
716 E 4500 S, Ste. N240
Salt Lake City, UT 84107
*Attorney for Debtors*

Kenneth Woolsey
Stephanie Woolsey
5562 W. Nelson Peak Cir.
Herriman, UT 84096
*Debtors*

U.S. Trustee's Office